EreemaN, J.,
delivered tbe opinion of tbe court:
This bill is filed by complainants, assignees of a judgment for about $1,500, obtained in Kentucky, by Derring-ton, against B. M. Elli% tbe other defendants being bis sons. It goes on tbe ground that a tract of land, sought to be subjected to payment of this debt, bad been fraudulently conveyed, or agreed to be conveyed, to J. W. and E. A. Ellis, tbe sons of B. M. Ellis, to binder and preven! tbe collection of this very debt against tbe father.
It appears that in January, 1869, complainant, Water-field, sold tbe land to tbe parties, giving bis title bond to tbe sons, and taking their notes for tbe purchase money. It may be assumed, for tbe purposes of this opinion, that tbe title of tbe land was taken to tbe sons, with tbe purpose alleged — that is, to prevent tbe payment of this Der-rington judgment. On tbe facts in testimony, it might well be doubted, taking all tbe proof, as to whether this is clearly made out against tbe sons; yet, assuming tbe purpose to -be, as we have done, there is an inseparable objection to the bill of complainant. It is very satisfactorily *644 shown that complainant, Waterfield, actively participated in this arrangement, with a full knowledge of the design. It is probable, on the facts in the record, it would be shown that he advised it so to be done. In addition to the direct testimony of defendants to this point, the complainant’s cross-examination of a witness of defendant, by a direct question put to the witness for the purpose, proves the settlement; that Dr. Waterfield did advise the title to be taken ¿s it was taken, and he himself proves clearly it was done with his knowledge of the fraudulent purpose. Other facts shown bv complainants corroborate this view. Assuming this to be true, then it follows complainant, Waterfield, would be repelled from a court of equity in this case, not, perhaps, so definitely on the ground of strict estoppel, as his Honor, the chancellor held, but on the maxim, “that he who comes into a court of equity must himself come with clean hands,” so that, says Mr. Smith, Manual of Equity, p. 23: “If a person seeks to cancel, set aside, or obtain the delivery up of an instrument on account of fraud, and he himself has been guilty of willful participation in the fraud, equity will not interpose on his behalf, unless the fraud is against public policy, and public policy would be defeated by allowing it to stand.” The rule, as a matter of course, applies only to misconduct in reference to the matter in litigation. See, also, Story’s Eq. Jur., vol. 1, sec. 695. These principles clearly repel Waterfield. Boyd, the joint assignee, stands in no better condition, as he has taken his place with Waterfield, and, we are satisfied, with full knowledge of all Waterfield knew and had done, as he was his attorney in filing the ' bill by Waterfield to enforce the vendor’s lien for purchase money against Ellis, out of which bad feeling grew; evidently, between Waterfield and them, which induced the purchase of this judgment, probably for a mere nominal consideration.
We do not think it necessary to go into a more elaborate *645 discussion of the facts or the law, as we are perfectly satisfied the case is properly within the rule we have cited, and the chancellor’s decree is correct. It is, therefore, affirmed with costs.